Good morning, David Rahnmeier of Rahnmeier & Associates. For the plaintiff below and the appellant here, Dr. Christopher Johnson. In my remarks, I am not going to talk about Dr. Johnson's hostile work environment claim. Obviously, I will respond to any questions, but I think that area has been very exhaustively dealt with by the briefs in the absence of any questions. I would focus on just a couple of points on the job action aspects of Dr. Johnson's 42SC Section 1981 claim. First, those two issues that I want to address are the case's scope after reversal and any collateral, estoppel consequences from the state court unpublished court of appeal decision. On the scope of the case after the prior reversal by the Ninth Circus, there is inescapably ambiguity in this Court's prior decision. Were these same issues in the case at the time of the first court of appeals decision? These same issues? Yes. Yes. Dr. Johnson pleaded a 42SC Section 1988 claim that included a hostile environment claim and the three job action claims below. There was never a motion to dismiss brought. The district court, sua sponte, dismissed it on appeal. The only issue raised in the opposition, not in my opening brief, in the opposition was the hostile environment portion of the 42SC Section 1981 claim. And that's what was discussed in the opinion at the end of that opinion. Wait a minute. The whole thing was dismissed. Presumably you filed an appeal saying the whole thing should be reinstated, right? Yes. So what do you mean it wasn't discussed? Pardon? So what do you mean by saying it wasn't discussed? First of all, the merits of the case were not discussed in my opening brief. The only thing I said was, look, there was a dismissal when there wasn't a motion to dismiss. The opposition brief raised the hostile environment claim. And in my reply brief, I responded to it. That's what the Court discussed. That was the only portion of the 42SC 1980 claim that was put at issue before the Court by the arguments other than the issue that had been dismissed on the basis of a sua sponte without any ground articulated. I'm sorry. Didn't we say in the first opinion that you'd waived everything else other than the hostile environment claim? No. There's not a footnote that says that Johnson's 1981 claim against the medical staff, which included the contentions that they wrongfully revoked his staff privileges, was among the claims waived by the first amended complaint? The answer is yes, actually. What it said is that the medical staff wrongfully revoked his staff privileges and that the medical staff created a hostile work environment was among those claims waived by the First Amendment amended complaint. That's footnote 2. I think that in fact is not what happened. It doesn't matter whether it's what happened. It matters whether it was in the opinion and, therefore, it's over with. Right. Well, I think there's nothing more I can say about that thing. Okay. And unless you have questions about the hostile work environment claim, then I would save my time for rebuttal. Are there any questions? I would prefer that you argue something about it. I don't think in general. This is about the second or third time this has happened this week. If you have an argument and you're the appellant, you have to make it. Otherwise, you're in essence sandbagging the defendant because you're not the opposing party because you're not putting anything out there. You're so, yes, I'd like to hear an argument if you have one. Well, but on the other hand, you don't have to argue everything that's in your brief. I believe, with all due respect, I have argued everything that's in the brief. I mean, I have set forth everything I can say that's in the brief. I'm happy to repeat that, but it seems to me more productive to respond to whatever arguments they make because I can't add to what I think is a very exhaustive treatment of the hostile environment claim. So if you've got questions, I'm happy to address them in the absence of that. I'll reserve the approximately ten minutes or nine minutes. They may not get up. They may just – That's fine. I'm happy. Where are you? I'm happy with the brief, Your Honor. We often counsel people to – if you think you've got it. You don't have to argue stuff. You don't waive anything by not saying – I would be so presumptuous to say I've got it, but I would say I don't think – I can't think of anything more that I can say that I haven't already said. And I've read the instructions, don't repeat what's in your brief. So I guess that's where I am. You'll get a gold star for that. Pardon? You'll get a gold star for that. If you've got a pat hand. Pardon? If you've got a good pat hand. If you've got a pat hand, sit down. A pat hand? That's a poker. I'm not presumptuous enough to assume anything, Your Honor. That's a good idea. Thank you. Good morning. My name is Allison Vasquez. I represent one of the defendants in Apelli's Riverside Healthcare System, LP. My client does business as Riverside Community Hospital, and so I'll refer to the hospital as hospital rather than Riverside Community Hospital. The other defendant is Dr. Robert Duncanson. He's represented by his own attorney. So what we've agreed to do today is to split our 15 minutes of time. I'll use the first 10 minutes of our oral argument time discussing issues that are common to both the hospital and to Dr. Duncanson, and then Dr. Duncanson's counsel will use the remaining five minutes to discuss those issues that are particular to Dr. Duncanson. Could you zero in on the issue that troubles me, and that is on the hospital work environment, that there's a particularly outrageous incident involving Dr. Vlasic, who charged into and threatened Mr. Johnson and called him by a well-recognized and despicable racial slur. And that's a fairly severe incident. And then isn't it true that Dr. Johnson therefore had to continue working with Dr. Vlasic, such that that should count in the work conditions, and then you aggravate it, one aggravates it by the other incidents that cumulatively could rise to the level of a hostile work environment? It's pretty hard to ignore an overt and physical altercation. It's not just words. It's more than words in that case. And then he has to continue to work in that environment. That's troublesome. Could you address that? Yes, I will. The comment that you're referring to is a comment that occurred. Dr. Johnson alleges that he found an issue with a patient that required surgery that Dr. Vlasic, who was another trauma surgeon, had missed. And when Dr. Johnson had scheduled the patient for surgery and Dr. Vlasic found out about it, Dr. Johnson claims that Vlasic used the N-word to Dr. Johnson and then approached him like he was going to strike him. This comment was made without witnesses. Well, we're on summary judgment, so you have to assume the facts are that that happened. And this was something that was considered both in our summary judgment and it was something that was addressed by the district court. It was an occasion which occurred. You're describing what led me to my question. I wouldn't have asked the question if I didn't read the attorney. I would like you to explain why it wasn't, in and of itself, in combination then. In and of itself, it was a very, very outrageous event. And it colored the work environment, particularly since Dr. Johnson had to continue to work with Dr. Vlasic. Isn't that correct? We disagree that it colored his work environment. Would you answer my question? Isn't it correct that he had to continue working with Dr. Vlasic? It is correct that he did have to continue. Somebody who has threatened him physically and called him a nigger. That is correct. And then you add in the other events, including another doctor, who I understand to be black, who said, well, you know, there are two standards here, one for blacks and one for whites. Words to that effect. So could you just address why, under our precedent, not with the district court. This is summary judgment. We've got to decide whether there's a tribal issue here. That's what I'm trying to do. Okay. Thank you. Under next circuit precedent, I don't think that taking Dr. Vlasic's statement, which we do agree, it was an awful thing that happened. He did continue to work with Dr. Johnson. Taking that with the other incidents, they weren't enough to show that they were severe or pervasive enough to alter Dr. Johnson's work environment. Why? Because Dr. Johnson, with Vlasic in particular, he claims that this happened one time and never happened again. There is no evidence in the record that Dr. Johnson had any problems with Dr. Vlasic after this happened. As far as the comments that you referenced that Dr. Baxter made about black physicians living up to a different standard than their counterparts, this was an observation that was made by Dr. Baxter. The comment by itself does not suggest that the hospital itself is somehow racially biased against Dr. Johnson. I'm not saying by itself. I asked in combination. Well, I think in combination you do have to consider. If I can interrupt, why don't you just repeat what was said to Dr. Johnson? Let the people in the audience know what really happened here.  Yeah, what he said when he called him a nigger, you know. Dr. Vlasic called him a fucking nigger, and Dr. Baxter made a comment to him about black physicians need to essentially Well, he said more than that. He said more than that. Just read it to us. I don't have the quote for Dr. Baxter because it's actually changed multiple times. Vlasic is what he said. Oh, so Vlasic was he called him a fucking nigger. Yeah, he said something else, didn't he? No. It was more why did you do this to me, you fucking nigger. I have a question, which is we had an earlier case here. It was originally upheld on summary judgment, and then there was rehearing, and the panel held that essentially these allegations, same allegations which were supported on summary judgment, were sufficient for 12p6 purposes. Now, I'm having a hard time understanding why when those, at least all but one of those instances played out or proved out and hadn't been contradicted. I mean, there was no, there's not even, Dr. Vlasic never, there's no declaration from him saying I didn't say that. So why isn't it essentially determined by our earlier opinion? I understand that there's theoretically some difference between 12p6 and summary judgment, but I don't understand what it is. Can you tell me what it is? I don't know that it's just a theoretical difference between a 12p6 and a motion for summary judgment. Well, if he says, if he alleges X happened in the complaint, and we say, well, if X happens, you've stated a complaint, and then he puts in declarations on summary judgment saying X happened, exactly X, and there's nothing contradicting it or no reason not to accept that on summary judgment. Why are we doing it twice? We do it at this stage because at the motion to dismiss stage, you're not looking at the entire circumstance. You're not looking at the totality of everything that happened. And at the summary judgment stage, you've got the evidence before you where you're trying to figure out over the course of Dr. Johnson's employment at the hospital, which went from 1999. And why weren't we doing the same thing? I mean, since it's a harassment claim, and therefore has a time element to it, you couldn't decide the 12p6 on isolated basis, and they didn't. The 12p6, though, was purely to determine if there was a plausible claim that could go to the next stage. There wasn't any evaluation. Right, because you want to find out whether the allegations had anything in them. But the allegations, the record is exactly the same as the allegations, except for this issue about the doctor at the other hospital. But except for that, it's exactly the same. Am I right about that, first of all, that there's really no significant difference between what was in the complaint and what was put in its summary judgment, and, in fact, uncontradicted, other than this piece about the one doctor who supposedly had opposed African-American doctors at a different hospital? That's correct. But other than that, it's the same? He's provided evidence suggesting that those allegations were what they were. What is one doing on a 12p6 other than saying if this turns out to be supported by evidence, particularly when it was at this degree of specificity, which it was in the allegations, why are we doing it again? I don't think we are doing it again, actually. This is an area where it is a different standard. It's not a theoretical. Well, what is the different standard specifically? What is it? The different standard is, at the motion to dismiss stage, it's to evaluate whether the facts in the four corners of the complaint are sufficient enough to get past that stage. To state a claim. To state a claim. To state a claim in discovery. Okay. And then at the motion for summary judgment stage, it's to look at everything, all of the circumstances, not just those allegations that were raised in the complaint, to see if all of those allegations, based on the case law, create a severe, pervasive, hostile work environment. I must say that I'm having a very hard time understanding the difference. But go on with your argument. Okay. I'm actually eating into Dr. Duncanson's counsel's time. Is there a question that I can respond to? And I'll turn it over to him. Good morning. I represent Dr. Duncanson, who is the former chief of medical staff at Riverside Community Hospital. The narrow issue, with regard to my client, is whether or not there's individual liability for him. I do actually agree with Ms. Vasquez and her arguments. But looking at the narrow issue in front of this court, referring to Dr. Duncanson. I can barely hear you. Looking at the narrow allegations against Dr. Duncanson, they actually all concern the termination of staff privileges that I think this court has remarked are barred. Even if they weren't barred, there is no evidence of any malice by Dr. Duncanson. Excuse me. You call him Duncanson? Dr. Duncanson. How is it spelled? D-U-N-C-A-N-S-O-N. It's funny. In the materials that we had, it was Dickinson. And there's a Duncanson. Dickinson was somebody else, right? She was a nurse. That was worth my appearance today alone. Yeah, okay. Thank you. And Dr. Duncanson, there's no evidence of any malice. In depositions, Dr. Johnson, when asked if Dr. Duncanson intended to discriminate against him, as just an anecdote, said, quote, I'm not a mind reader. No. That's the very essence of speculation. He admitted that Dr. Duncanson never made any racially disparaging remarks. Is he trying to claim that the harassment claims are going forward against Dr. Duncanson? I think he's trying to make part of the, yes. On what basis? The way I understand Plaintiff's argument is that the totality of the circumstance somehow includes the termination of the privilege and the failure to somehow investigate what he had brought to the attention of Dr. Duncanson. It's also disputed, might I add, that Dr. Duncanson wasn't even aware of any of Dr. Johnson's racial complaints about improper racial remarks until after the termination of the staff privileges. Dr. Duncanson is the president of the medical staff. All he did was carry out his duties. There's no reason he should be on this lawsuit. There's no evidence of discrimination. There's no evidence of any scienter. There's nothing in the records that suggests that he should remain a defendant in this case. And in short, that's where we stand. There's no evidence of malice, let alone any racial intent of anything. As president of the medical staff, he's simply following the bylaws. He's carrying out his duties. He was essentially a participant in the JRC hearing. And there's no reason he should be a defendant in this case. Unless there are any questions, that's really all I have. Thank you. Thank you. Thank you. I have just a couple of comments with respect to the colloquy between Judge Fischer and Ms. Vasquez talking about the classic incident. In addition to all the issues that were raised in that discussion, there also was no remediation with respect to it. Not only Dr. Johnson did report to Dr. Baxter, there was never any feedback to him that any remedial action had been taken. With respect to the discussion of the impact of the prior decision, the plausibility requirement for a motion to dismiss sets out the legal standard, and the summary judgment motion operates upon the same legal standard. The difference is that one is what's said in the complaint, and one is what the evidence shows. And that can be a major difference where the complaint is less specific than this one was. But in this instance, the complaint was very specific. Right. And as I understand it, the evidence was exactly what was in the complaint. With the minor exception, well, with the minor exception what was in the complaint, and there were a large number of additional facts that were not pleaded in the original complaint that was before the Ninth Circuit before that were pleaded. Which facts? None of the Baxter evidence was in the original complaint that was before the Ninth Circuit. None of it. I was not involved at that stage of proceedings. I came in after the dismissal. I don't know why that was not in it, but I believe that my predecessor counsel somehow believed that you could not either strategically, you could not assert a black-on-black discrimination claim. And I certainly don't hold that view. So there was a great deal more and a lot more specificity that was pleaded in the second admitted complaint after the reversal. One thing that wasn't previously was this thing about the doctor who was on the selection committee. Yes. And the comments he had made elsewhere. Yes, he made those comments at Loma Linda University. Those might be relevant to a substantive discrimination claim, but I don't see how it could be relevant to a harassment claim at a different hospital. Well, you say you don't see how it is relevant? Not to a harassment claim. It could be relevant to a discrimination claim because it would demonstrate a state of mind as a decision-maker in the, in Riverside Hospital. But if the statements were not made in the context of the Riverside Hospital, I don't see how it could be a harassment claim. The problem is that it is not, I mean, you're correct in your analysis up to this point. The problem is that Dr. Johnson had to work under, in a sense, under Dr. Childers because Dr. Childers controlled his schedule and he was on the quality review committee. Yes. So it's relevant to Dr. Childers' state of mind, but it's not relevant by itself to the working conditions that he was working under. Well, it certainly became relevant when Dr. Baxter reported that bias to, I'm sorry, when Dr. Johnson reported the bias to Dr. Baxter and then had to continue working under Dr. Childers. I mean, think about being in that workplace and having important aspects of your work life controlled by somebody who you reported to another of your supervisors is biased against blacks. That certainly affects your work environment. So once he reported to Dr. Baxter, and again, Dr. Johnson's testimony is, on about 30 occasions he complained to Dr. Baxter and never was there any remediation done. It does affect the workplace. I don't have any more unless there are other questions. Thank you. Thank you. Matters submitted. We'll call the next matter. Marla James versus the city of Costa Mesa.
judges: Pregerson, Fisher, Berzon